UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:16-CV-734

BRENNAN JAMES CALLAN                                           PLAINTIFF

v.

MAYOR GREG FISCHER, *et. al.*                                  DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on *pro se* Plaintiff Brennan James Callan's Motion for Immediate Restraining Order/Injunction, which this Court construes as a Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction. [DN 2.] For the reasons discussed below, the portion of Plaintiff's motion seeking a TRO is DENIED.

## BACKGROUND

The subject of Plaintiff's motion is the removal of the Confederate monument located on South Third Street in Louisville, Kentucky scheduled to begin today, November 19, 2016. Plaintiff seeks the prevention of "any/all construction, destruction, removal, any form of personal contact with the monument or the ground surrounding the Confederate Monument." [DN 2 at 4.] Plaintiff additionally seeks "the removal of the unlawful fencing that is around the Confederate Monument so that it can appear as it has since 1895 without unlawfully restricting mourners from visiting the venerated and lawfully protected monument." [*Id.*] Plaintiff requests that such a restraining order/injunction remain in effect until May 16, 2017, at which time the Kentucky Military Heritage Commission will hold its next meeting. [*Id.*]

1

STANDARD

In determining whether to grant a temporary restraining order, courts must consider four factors: "(1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a [TRO], (3) whether granting the [TRO] would cause substantial harm to others, and (4) whether the public interest would be served by granting the [TRO]." *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008) ("In determining whether to stay the TRO, we consider 'the same factors considered in determining whether to issue a TRO or preliminary injunction.'") (citing *Ne. Ohio Coal. for Homeless & Serv. Employees Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006)). These factors are "factors to be balanced and not prerequisites that must be satisfied." *In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 859 (6th Cir. 1992) (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985)). "These factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements." *Id.* (citing *Friendship Materials, Inc. v. Michigan Brick, Inc.,* 679 F.2d 100, 102 (6th Cir. 1982)). The district court's decision to grant or deny a TRO is reviewed for abuse of discretion. *Ne. Ohio Coal. for Homeless & Serv. Employees Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) (citing *Beacon J. Publ'g Co., Inc. v. Blackwell,* 389 F.3d 683, 684 (6th Cir. 2004)).

DISCUSSION

Plaintiff alleges a TRO is warranted on four grounds. First, Plaintiff claims, from what the Court can discern, that the Commonwealth of Kentucky's State Treasury Office should not have any involvement with the monument. [DN 2 at 5.] Plaintiff asserts that, pursuant to Chapter 393 of the Kentucky Revised Statutes, which contains Kentucky's laws regarding escheat of property to the State, the monument came under the ownership of the Kentucky State Treasury

Office in 1927 and belongs to the Commonwealth of Kentucky. [*Id.*] However, because "the Great Depression happened shortly thereafter and continued for 10-years, there was no particular reason for the involvement of the State Treasurer since 1927." [*Id.*]

Second, Plaintiff claims the monument is protected from removal by 38 U.S.C. § 2306, which provides, in part:

**§ 2306. Headstones, markers, and burial receptacles**

**(a)** The Secretary shall furnish, when requested, appropriate Government headstones or markers at the expense of the United States for the unmarked graves of the following:

**(1)** Any individual buried in a national cemetery or in a post cemetery.

**(2)** Any individual eligible for burial in a national cemetery (but not buried there), except for those persons or classes of persons enumerated in section 2402(a)(4), (5), and (6) of this title.

**(3)** Soldiers of the Union and Confederate Armies of the Civil War.

**(4)** Any individual described in section 2402(a)(5) of this title who is buried in a veterans' cemetery owned by a State.

38 U.S.C. § 2306. In reliance on this statutory provision, Plaintiff claims that all veterans must be treated equally and that a TRO should issue to prevent the Defendants from "perpetrat[ing] the desecration" of a grave marker. [DN 2 at 6.]

Third, Plaintiff claims that removal of the monument would violate the Internal Revenue Code. [*Id.* at 6–7.] Specifically, Plaintiff contends that Defendants "University of Louisville and the University of Louisville Foundation are spending at least $350,000 of their non-profit money to pay for the movement of the Confederate Monument to Brandenburg, Kentucky." [*Id.* at 6.] Plaintiff contends that this constitutes discrimination on the part of the University of Louisville, which is prohibited under its Articles of Incorporation, and in effect, the University, as a non-profit organization, is violating the Internal Revenue Code. [*Id.* at 7.]

3

Fourth, Plaintiff claims that a TRO is warranted under "Kentucky's Cemetery Laws protecting the destruction and desecration of 'venerated objects.'" [*Id.*] "Desecration of venerated objects" is a crime under Kentucky law, Ky. Rev. Stat. Ann. § 525.105; 525.110, as is "violating graves." Ky. Rev. Stat. Ann. § 525.115. Kentucky law also requires "[t]he owner or owners of public or private burial grounds . . . [to] protect the burial grounds from desecration or destruction as stipulated in KRS 525.115 . . . . " Ky. Rev. Stat. Ann. § 381.697.

Plaintiff's "Qui Tam" complaint additionally contains allegations of violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) and other violations of federal criminal law, including fraud and tax fraud. [DN 1 at 4.] Plaintiff states that he filed his complaint pursuant to the Whistleblower Protection Act of 1989. [*Id.*] To this point, however, the Court notes that this action is not truly a "qui tam" action nor is this case properly brought under the Whistleblower Protection Act of 1989, as Plaintiff asserts. "The Whistleblower Protection Act protects government employees from being punished for disclosing potentially embarrassing information about the operation of government." *Weber v. Dep't of Army*, 9 F.3d 97, 101 (Fed. Cir. 1993) (citing *Marano v. Dept. of Justice,* 2 F.3d 1137 (Fed.Cir.1993)). It does not apply to private citizens, nor does it afford protection to individuals who are not employees of the entity on which they seek to blow the whistle. Moreover,

"A *qui tam* action is a whistleblower claim

> brought by an informer, under a statute which establishes a penalty
> for the commission or omission of a certain act, and provides that
> the same shall be recoverable in a civil action, part of the penalty
> to go to any person who will bring such action and the remainder
> to go to the state or some other institution.

*McKenzie v. BellSouth Telecommunications, Inc.*, 219 F.3d 508, 511 n. 1 (6th Cir. 2000) (citing Black's Law Dictionary 1251 (6th ed. 1990)). Qui tam actions are used almost exclusively in the realm of False Claims Act cases, as the FCA authorizes "individuals who are aware of fraud

4

being perpetrated against the government to bring such information forward." *U.S. ex rel. Jones v. Horizon Healthcare Corp.*, 160 F.3d 326, 335 (6th Cir. 1998) The case relied upon by Plaintiff in support of his contention that this action is a "qui tam," *United States v. Florida-Vanderbilt Development Corp.*, also states that, for a private citizen to bring a valid qui tam action, "[t]here must be statutory authority, either express or implied, for the informer to bring the qui tam action." 326 F. Supp. 289, 291 (S.D. Fla. 1971). None of the statutory provisions relied upon by Plaintiff in this case contain such authorization. Therefore, this action is not properly brought as a qui tam action, and the Court will therefore order this case unsealed.

The Court now turns to a consideration of the factors for granting a temporary restraining order.

### 1) Likelihood of success on the merits

The first factor, the likelihood of success on the merits, is the principal consideration for courts when determining whether a temporary restraining order is warranted. The Sixth Circuit has noted that, "[a]lthough no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000) (citing *Michigan State AFL–CIO v. Miller,* 103 F.3d 1240, 1249 (6th Cir. 1997) ("[A] preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed.")). That is precisely the situation in this case, where this Court can discern no likelihood whatsoever that Plaintiff will succeed on the merits of his claims. Plaintiff's argument that removal of the monument would violate § 2306 of the United States Code is simply untenable; that statutory section addresses the provision of headstones and grave markers for individuals buried in unmarked graves. Section 2306 has no application in this case.

Plaintiff's claim that the University of Louisville and the University of Louisville Foundation are discriminating against Confederate veterans in violation of the Internal Revenue is likewise untenable, as are Plaintiff's claims that "Kentucky's Cemetery Laws" are applicable in this matter. Those laws, aimed at protecting burial sites, simply do not apply in the context of the Confederate monument at issue here. It is also unclear precisely what RICO violations or other frauds Plaintiff alleges in this action, and therefore the Court can similarly discern no likelihood that Plaintiff will succeed on the merits of such unsupported claims.

### 2) Irreparable harm

The second consideration of whether a plaintiff will suffer an irreparable harm is a significant, and possibly determinative, factor in whether a court may grant a TRO or a preliminary injunction. *Friendship Materials, Inc. v. Michigan Brick, Inc.,* 679 F.2d 100, 105 (6th Cir. 1982). The "the harm alleged must be both certain and great, rather than speculative or theoretical." *State of Ohio ex rel. Celebrezze v. Nuclear Regulatory Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987). The injury must be of such imminence that there is a clear and immediate need for relief in order to prevent harm. *Wis. Gas. Co. v. Fed. Energy Regulatory Comm'n,* 758 F.2d 669, 674 (D.C. Cir. 1985).

The Court is not persuaded that Plaintiff will suffer such irreparable harm in the absence of a TRO. Indeed, the only stake Plaintiff alleges to have in this action is the fact that he is "a distant cousin of the original President of the Woman's Confederate Monument Association (Susan Marshall Preston Hepburn) that was formed in the 1890s under Kentucky Law," and which "invested about seven years to raise the money, recruit a designer, and obtain the real estate property and have the Confederate Monument built at its current location." [DN 1 at 4.] He further alleges he is "related to CSA President Jefferson Davis, Major General William President

(CSA General, U.S. Ambassador to Spain, U.S. Congressman, and native Louisvillian), CSA General Albert Sydney Johnston (five star general), Aid de Camp William Preston Johnston, General Breckinridge, and numerous other Confederate States of America political and military leaders." [*Id*. at 4.] Plaintiff claims the "Confederate Monument is essential in comprehending the lives and deaths of [his] family and the countless other Union and Confederate soldiers and our nation." [*Id*. at 5.]

Plaintiff has not met his burden of demonstrating that he will suffer irreparable harm without a TRO to prevent the removal of the monument. Neither any alleged relation to individuals responsible for raising the monument, nor relation to Confederate and Union soldiers is sufficient. While the Court acknowledges that the planned removal is scheduled for today, November 19, 2016, thereby making the planned action "immediate" and "irreparable" in that narrow sense, Plaintiff has nonetheless failed to establish any *harm to him* as a result of the removal.

### 3) Harm to others and the public interest

With regard to the third factor, it is unclear whether the granting of a TRO would or would not cause substantial harm to others. With regard to the fourth factor, Plaintiff contends that a TRO would serve the public interest because, as stated above, that the monument "is essential in comprehending the lives and deaths of [his] family and the countless other Union and Confederate soldiers and our nation." [*Id*. at 5.] Here, too, the Court is unpersuaded that this factor weighs in Plaintiff's favor. Taking all four factors into consideration, Plaintiff has not demonstrated that a TRO is warranted.

### CONCLUSION

For the reasons discussed herein, Plaintiff's motion for Immediate Restraining Order/Injunction, which this Court construes as a Motion for a TRO and a Preliminary

Injunction, is DENIED with respect to the TRO. Additionally, the Court orders this case to be

unsealed, as it is not a proper qui tam action, as discussed above. After service has been made on

all Defendants, the Court will set a call to address what the Court construes as Plaintiff's motion

for a preliminary injunction.

cc:     Brennan James Callan, *pro se* Plaintiff
        10428 Bluegrass Parkway #327
        Louisville, KY 40299

and

Defendants

        Mayor Greg Fischer
        4th Floor
        527 W. Jefferson Street
        Louisville, KY 40202

        Louisville-Jefferson County Metro Government
        527 W. Jefferson Street
        Louisville, KY 40202

        Queenie Averette
        County Judge/Executive of Jefferson County
        Louisville, KY 40202

        County Attorney's Office
        Jefferson Hall of Justice
        600 West Jefferson Street
        Louisville, KY 40202

        Mike O'Connell,
        Jefferson County Attorney's Office
        Jefferson Hall of Justice
        600 West Jefferson Street
        Louisville, KY 40202

        Stites and Harbison, PLLC

8

Attorneys for U of L
Office of Legal Affairs
University of Louisville
2301 S. Third St
Louisville KY 40292

Stites and Harbison, PLLC
400 West Market Street
Suite 1800
Louisville, KY 40202

University of Louisville Foundation
University of Louisville
2301 S. Third St
Louisville KY 40292

Former President James Ramsey
C/o President's Office
C/o U of L Foundation Office
University of Louisville
2301 S. Third St
Louisville KY 40292

Dr. Neville G. Pinto, Interim President
President's Office
University of Louisville
2301 S. Third St
Louisville KY 40292

Kentucky Department of Highways
District 5, Louisville
8310 Westport Road
Louisville, KY 40242

Property Valuation Administration
Office of the Jefferson County PVA
Glassworks Building
815 W. Market St. Suite 400
Louisville, KY 40202

Tony Lindauer, Administrator
Office of the Jefferson County PVA
Glassworks Building
815 W. Market St. Suite 400
Louisville, KY 40202

Allison Ball, State Treasurer
1050 U.S. Hwy. 127 South
Suite 100
Frankfort, KY 40601

Hon. Judith McDonald Burkman
Jefferson Circuit Court, District 9
C/o Jefferson Louisville County Circuit Court Clerk's Office
514 West Liberty Street
Louisville, Kentucky, 40202

Public Arts Commission
444. S. 5th Street
Louisville, KY 40202