UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:16-CV-734-TBR

BRENNAN JAMES CALLAN                                                                PLAINTIFF

v.

MAYOR GREG FISCHER, *et. al.*                                         DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the Court on several pending motions. First, *pro se* Plaintiff Brennan James Callan has filed a motion for a preliminary injunction and a motion to amend his complaint. [DN 2; DN 20.] Second, the many Defendants in the case have filed multiple motions to dismiss, both under Rule 12(b)(1) and Rule 12(b)(6). [DN 13; DN 17; DN 21; DN 24; DN 28; DN 34.] For the reasons that follow, Callan's motions, [DN 2; DN 20], are **DENIED** and Defendants' motions, [DN 13; DN 17; DN 21; DN 24; DN 28; DN 34], are **GRANTED**. The Court will enter a separate Order and Judgment consistent with this Memorandum Opinion.

BACKGROUND

The subject of Plaintiff's lawsuit is the removal of the Confederate monument (the "Monument") which was formerly located on South Third Street in Louisville, Kentucky. The Monument was removed on November 19, 2016. Plaintiff initially filed a motion for a temporary restraining order to halt the removal of the monument, which this Court denied on November 19, 2016. [DN 4 (Memorandum Opinion and Order).] Therein, however, Callan also requested a preliminary injunction, which remains pending. [DN 2.]

Callan sued several individuals and entities in this suit. These are Louisville Mayor Greg Fischer, the Louisville Metro government, Jefferson County Judge Executive Queenie Averette,

the Jefferson County Attorney's Office, Jefferson County Attorney Mike O'Connell, the law firm of Stites & Harbison, the University of Louisville Foundation, Former UofL President James Ramsey, Interim UofL President Dr. Neville G. Pinto, the Kentucky Department of Highways, the Jefferson County Property Valuation Administration, Jefferson County Property Valuation Administrator Tony Lindauer, Kentucky State Treasurer Allison Ball, Jefferson County Circuit Court Judge Judith McDonald-Burkman, and the Louisville Public Arts Commission. [*See* DN 1 (Complaint).]

In his complaint, Callan alleges that he

> is distantly (genealogically) related to CSA President Jefferson Davis, Major General William President (CSA General, U.S. Ambassador to Spain, U.S. Congressman, and native Louisvillian), CSA General Albert Sydney Johnston (five star general), Aid de Camp William Preston Johnson, General Breckinridge, and numerous other Confederate States of America political and military leaders. Furthermore, Callan is a distant cousin of U.S. President Abe Lincoln, U.S. Vice President John C. Breckinridge, and numerous Union Generals and soldiers.

[DN 1 at 4.] He further states that he "freely admit[s] that THE AMERICAN CIVIL WAR WAS MY FAMILY'S FAULT as we led both side[s] of the war." [*Id.* (capitalization in original).] Callan also alleges that he is "a distant cousin of the original President of the Woman's Confederate Monument Association (Susan Marshall Preston Hepburn) that was formed in the 1890s under Kentucky law." [*Id.* at 3.] In sum, Callan contends that the Monument at issue in this case "is essential to comprehending the lives and deaths of my family and the countless other Union and Confederate soldiers and our nation." [*Id.* at 4–5.]

Callan mentions numerous federal and state statutes in his complaint, which the Court will address in detail below. In their many motions to dismiss, Defendants contend that Callan lacks standing to maintain this suit, that this Court lacks subject-matter jurisdiction, and that Callan has failed to state a claim upon which relief can be granted. Because the Court agrees

with Defendants that Callan's claims are insufficient, Defendants' motions will be granted, Callan's motions will be denied, and Callan's claims will be dismissed.

STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may assert by motion the defense of "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky,* 381 F.3d 511, 516 (6th Cir. 2004). Because the parties here do not request that the Court make any factual determinations in ruling on the motion to dismiss, but rather dispute only the sufficiency of Boggs' complaint, the Court "will treat this as a 'facial' 12(b)(1) motion." *Id.* "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading." *Gentek Bldg. Prods., Inc. v. Steel Peel Litig.,* 491 F.3d 320, 330 (6th Cir. 2007). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Bauer v. RBX Indus. Inc.,* 368 F.3d 569 (6th Cir. 2004).

A defendant may also move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To that end, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss under Rule 12(b)(6), a party must "plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

3

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). When considering a Rule 12(b)(6) motion to dismiss, the court must presume all of the factual allegations in the complaint are true and draw all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Should the well-pleaded facts support no "more than the mere possibility of misconduct," then dismissal is warranted. *Iqbal*, 556 U.S at 679. The Court may grant a motion to dismiss "only if, after drawing all reasonable inferences from the allegations in the complaint in favor of the plaintiff, the complaint still fails to allege a plausible theory of relief." *Garceau v. City of Flint*, 572 F. App'x. 369, 371 (6th Cir. 2014) (citing *Iqbal*, 556 U.S. at 677–79).

DISCUSSION

Because the Court can conceive of multiple reasons why Callan's claims cannot survive in this Court, his suit will be dismissed.

**I.** **Standing**

In their motion to dismiss, Dr. James Ramsey and Dr. Neville Pinto allege that Callan lacks standing to bring any of his "purported claims." [DN 34-1 at 2.] For the reasons that follow, the Court agrees.

"Standing is 'the threshold question in every federal case.'" *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). The purpose of Article III's standing requirement that federal courts may only adjudicate actual cases and controversies is "so that the judicial process is not transformed into " 'a vehicle for the

vindication of the value interests of concerned bystanders.' " *Id.* (quoting *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982) ("Were the federal courts merely publicly funded forums for the ventilation of public grievances or the refinement of jurisprudential understanding, the concept of 'standing' would be quite unnecessary.")); U.S. Const. art. III, § 2, cl. 1. Accordingly, standing "is a jurisdictional requirement." *Coal Operators & Assocs., Inc. v. Babbitt*, 291 F.3d 912, 915 (6th Cir. 2002).

"Where, as here, a case is at the pleading stage, the plaintiff must 'clearly ... allege facts demonstrating' each element. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (quoting *Warth,* 422 U.S. at 518). The standing requirement includes both constitutional requirements and prudential restrictions. From a constitutional standpoint, "a plaintiff must have suffered some actual or threatened injury due to the alleged illegal conduct of the defendant; the injury must be 'fairly traceable' to the challenged action; and there must be a substantial likelihood that the relief requested will redress or prevent the plaintiff's injury." *Coyne*, 183 F.3d at 494 (citing *Valley Forge,* 454 U.S. at 472). In other words, "the 'irreducible minimum' constitutional requirements for standing are proof of injury in fact, causation, and redressability." *Id.*

Next, "a plaintiff must also satisfy three prudential standing restrictions." *Id.* "First, a plaintiff must 'assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Id.* (quoting *Warth,* 422 U.S. at 499). "Second, a plaintiff's claim must be more than a 'generalized grievance' that is pervasively shared by a large class of citizens." *Id.* (citing *Valley Forge,* 454 U.S. at 474–75). Finally, "in statutory cases, the plaintiff's claim must fall within the 'zone of interests' regulated by the statute in question. These additional restrictions enforce the principle that, 'as a prudential matter, the plaintiff must be a

proper proponent, and the action a proper vehicle, to vindicate the rights asserted.'" *Id.* (quoting *Pestrak v. Ohio Elections Comm'n,* 926 F.2d 573, 576 (6th Cir. 1991)).

Callan has failed to plead sufficient facts to convince this Court of his standing to sue regarding the removal of the Monument. Most importantly, Callan has not shown the Court how he has personally suffered or will suffer an injury in fact, "the '[f]irst and foremost' of standing's three elements." *Spokeo*, 136 S. Ct. at 1547 (quoting *Steel Co. v. Citizens for Better Environment,* 523 U.S. 83, 103 (1998)). To demonstrate "injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). The Supreme Court has further explained that, in order "[f]or an injury to be 'particularized,' it "must affect the plaintiff in a personal and individual way." *Id.* (citations omitted).

Here, Callan has failed to demonstrate that the removal of the Monument affects him in the requisite "personal and individual way." *See id.* The only facts Callan pled in this regard relate to his alleged ancestral relation to several individuals involved in the Confederate and Union forces during the American Civil War. [*See* DN 1 at 3–5.] According to Callan, therefore, the "Monument is essential in comprehending the lives and deaths of my family and the countless other Union and Confederate soldiers and our nation." [*Id.* at 5.] Callan further alleges that, by facilitating the removal of the Monument, certain defendants are "violating the rights of Veterans and their families for whom that monument was dedicated." [*Id.* at 18.] In his motion for preliminary injunction, Callan contends that removal of the Monument would also "unlawfully restrict[ ] mourners from visiting the venerated and lawfully protected monument." [DN 2 at 4.] He further states that it is unlawful to discriminate against Confederate soldiers. [*Id.*

6

at 7.] Having considered all of these allegations, however, Callan has not shown the Court how he has suffered *personal* and *individual* injury as a result of the Monument's removal. Rather, his allegations specifically pertain to Union and Confederate soldiers, veterans, and alleged mourners. In the Court's view, this is insufficient. Accordingly, he fails this constitutional requirement.

Second, with respect to several Defendants, including Stites & Harbison, the Kentucky Department of Highways, and the Louisville Public Arts Commission, Callan has failed to establish his alleged injury is "traceable" to any conduct of those Defendants.

Finally, Callan fails multiple of the prudential requirements. In detail, Callan attempts to "rest his claim to relief on the legal rights or interests of third parties," such as veterans and deceased soldiers, which is insufficient to establish standing. *Coyne*, 183 F.3d at 494 (quoting *Warth,* 422 U.S. at 499). He also appears to allege no "more than a 'generalized grievance' that is pervasively shared by a large class of citizens." *Id.* (citing *Valley Forge,* 454 U.S. at 474–75). Though there may be a great number of citizens who agree with Callan that the removal of the Monument was improper, mere generalized grievances of this nature are insufficient to confer standing upon Callan. Accordingly, the Court finds that Callan's entire suit is properly dismissed for lack of standing.

**II.     Lack of Subject-Matter Jurisdiction Under 12(b)(1) or Failure to State a Claim Under 12(b)(6)**

Not only does the Court find that Callan lacks standing to maintain this suit, it further agrees with Defendants that none of Callan's many claims are sufficient to provide the Court with subject matter jurisdiction or, alternatively, fail to state a claim upon which relief can be granted. Of the two types of this Court's original jurisdiction, *see* 28 U.S.C. §§ 1331–1332, this

case involves the type known as "federal question."[1] [DN 1 at 2.] Pursuant to 28 U.S.C. § 1331, this Court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "In order to trigger federal-question jurisdiction under § 1331, a lawsuit must satisfy the well-pleaded complaint rule. Under this rule, a federal question must appear on the face of the complaint rather than as part of a defense, even if a federal-law defense is anticipated." *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 554 (6th Cir. 2012).

Importantly, "[a] claim invoking federal-question jurisdiction under 28 U.S.C. § 1331 . . . may be dismissed for want of subject-matter jurisdiction if it is not colorable, *i.e.,* if it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'" *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006) (quoting *Bell v. Hood*, 327 U.S. 678, 682–83 (1946)). However, the Supreme Court has long cautioned courts against conflating "constitutional insubstantiality" for purposes of subject matter jurisdiction and failure to state a claim upon which relief can be granted, which requires a merits determination. *Shapiro v. McManus*, 136 S. Ct. 450, 456 (2015). "Absent such frivolity, 'the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Id.* (quoting *Bell*, 327 U.S. at 682).

Though the Court finds it quite likely that Callan's claims meet the "immaterial" and "wholly insubstantial" requirements, out of an abundance of caution, the Court will address the sufficiency of Callan's claims on the merits. Ultimately, the distinction makes little difference to the Court, because even assuming that the Court has subject matter jurisdiction over Callan's

---

[1] Defendants have argued, and Callan has not disputed, that diversity jurisdiction cannot confer jurisdiction in this case, as Callan is a Kentucky resident, as is every Defendant in the case. Accordingly, the complete diversity requirement cannot be satisfied. *See* 28 U.S.C. § 1332(a)(1); [DN 1; DN 13 at 3.]

claims, it nonetheless finds that none of Callan's claim pass muster under Rule 12(b)(6), and therefore must be dismissed.

Callan mentions numerous state and federal statutes in his complaint. In detail, Callan alleges that various Defendants have violated (1) the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962; (2) Kentucky Revised Statutes Chapter 393 (Escheats to the State) and Kentucky cemetery laws, (3) numerous federal criminal laws, including 18 U.S.C. §§ 2, 3, 4, 371, and 1001; and (4) the Internal Revenue Code (IRC). [*See* DN 1 at 4, 6, 17–19.]

In his motion for preliminary injunction, which Callan filed contemporaneous to his complaint, Callan mentioned some of the same statutes as he included in his complaint and the following additional statute: (5) 38 U.S.C. § 2306 (Headstones, markers, and burial receptacles). [DN 2 at 5–6.]

Finally, in Callan's motion to amend his complaint, he seeks to add four federal causes of action: (6) 28 USC § 1361 (Writ of mandamus); (7) 18 U.S.C. § 4 (Misprision of felony); (8) 18 U.S.C § 7 (Special maritime jurisdiction); and (9) 18 U.S.C. § 659 (Theft and embezzlement by fraud or deception). [DN 20 at 11–15.] Callan either cannot maintain, or has not pled sufficient facts to state a claim under any of these statutes.

a) **Federal Criminal Statutes**

First, with regard to nearly all of the federal criminal statutes Callan references in his pleadings, there is no private right of action. Specifically, "the general rule is that a private right of action is not maintainable under a criminal statute." *Am. Postal Workers Union, AFL-CIO, Detroit Local v. Indep. Postal Sys. of Am., Inc.*, 481 F.2d 90, 93 (6th Cir. 1973). To that end, the Sixth Circuit has recognized "the firmly established principle that [in most circumstances]

criminal statutes can only be enforced by the proper authorities of the United States Government and a private party has no right to enforce these sanctions." *Id.* (quoting *Bass Angler Sportsman's Society of America v. United States Steel*, 324 F. Supp. 412, 415 (N.D. Ala.), *aff'd.*, 447 F.2d 1305 (5th Cir. 1971)).

Today, "[c]ongressional intent is the touchstone of whether private enforcement of a statute is permitted. Since the late 1970s, Congress has been on notice that, if it intends to create a private right of action, it had better do so expressly in the statute." *Cline v. Rogers*, 87 F.3d 176, 182 (6th Cir. 1996). Congress gave no indication whatsoever that it intended to provide private citizens a right of action to enforce such federal crimes as 18 U.S.C. § 2 (criminal liability of principals); § 3 (criminal liability for accessories after the fact); § 4 (misprision of felony), § 7 (criminal offenses committed in maritime jurisdiction), § 371 (conspiracy to commit offense to or defraud the United States), § 659 (embezzlement or theft), or § 1001 (criminal statements or entries). Accordingly, the Court agrees that Callan cannot maintain suit under any of these federal criminal laws.

On the other hand, Congress *did* create an express private right of action in the RICO Act, which Callan also mentions in his pleadings. *See* 18 U.S.C. § 1964(c)). However, this private action is available only to a plaintiff who is "injured in his *business or property* by reason of a violation of section 1962." *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2106 (2016) (quoting 18 U.S.C. § 1964(c)). Because Callan has not alleged an injury to *his* business or property, he is not eligible to bring suit under § 1964(c). *See id.* In sum, Callan cannot state a claim under and of the federal criminal statutes under Title 18 of the United States Code that he mentions in his complaint, motion for preliminary injunction, or motion to amend his complaint.

### b) Internal Revenue Code

Callan contends that Defendants Mayor Fischer and Dr. Ramsey are committing "INTERNAL REVENUE SERVICE FRAUD . . . by willfully, knowingly, and intentionally violating the rights of Veterans and their families for whom that monument was dedicated." [DN 1 at 18 (capitalization in original).] In his motion for injunction, Callan alleges that "[t]he University of Louisville and the University of Louisville Foundation are spending at least $350,000 of their non-profit money to pay for the movement of the Confederate Monument to Brandenburg, Kentucky," and that "under the Articles of Incorporation of the KENTUCKY SECRETARY OF STATE'S OFFICE WEBPAGES: the University of Louisville is not allowed to discriminate." [DN 2 at 6–7.]

True, "Congress has established private rights of action in the Internal Revenue Code for [some] tax-related matters." *Burton v. William Beaumont Hosp.*, 347 F. Supp. 2d 486, 493 (E.D. Mich. 2004) (citing, for example, 26 U.S.C. §§ 7431(a)(1), 7433)). These rights of action are contained in Title 26, United States Code Subtitle F, Chapter 76, Subchapter B, entitled "Proceedings by Taxpayers and Third Parties." Statutes in Subchapter B include § 7422, Civil Actions for Refund; § 7426, Civil Actions by Persons Other than Taxpayers; § 7431, Civil Damages for Unauthorized Inspection or Disclosure of Returns and Return Information; § 7432, Civil Damages for Failure to Release Lien; § 7433, Civil Damages for Certain Unauthorized Collection Actions; § 7433a, Civil Damages for Certain Unauthorized Collection Actions by Persons Performing Services Under Qualified Tax Collection Contracts; § 7434, Civil Damages for Fraudulent Filing of Information Returns; and § 7435, Civil Damages for Unauthorized Enticement of Information Disclosure. None of these statutes, however, cover Callan's allegation of "discrimination" by the University and University of Louisville Foundation against "Veterans

and their families." Accordingly, Callan has also failed to state a claim upon which relief can be granted under the Internal Revenue Code.

   c) **38 U.S.C. § 2306**

Callan also alleges that the removal of the Monument violates 38 U.S.C. § 2306, which provides, in part:

> **§ 2306. Headstones, markers, and burial receptacles**
>
> **(a)** The Secretary shall furnish, when requested, appropriate Government headstones or markers at the expense of the United States for the unmarked graves of the following:
>
>   **(1)** Any individual buried in a national cemetery or in a post cemetery.
>
>   **(2)** Any individual eligible for burial in a national cemetery (but not buried there), except for those persons or classes of persons enumerated in section 2402(a)(4), (5), and (6) of this title.
>
>   **(3)** Soldiers of the Union and Confederate Armies of the Civil War.
>
>   **(4)** Any individual described in section 2402(a)(5) of this title who is buried in a veterans' cemetery owned by a State.

38 U.S.C. § 2306. In reliance on this statutory provision, Callan claims that all veterans must be treated equally and the removal of the Monument constitutes a "desecration" of a grave marker. [DN 2 at 6.] Callan does not plead any facts, however, to suggest that the area surrounding the place where the Monument was formerly located housed any unmarked *graves* of any Union of Confederate soldiers, which is what the statute addresses. Moreover, § 2306 specifically applies to the Secretary of Veterans affairs, and therefore does not create a duty on behalf of any of the Defendants named in this action. *See* 38 U.S.C. § 2306(a). Accordingly, Callan's allegations under § 2306 also fail to state a claim upon which relief can be granted.

### d) 28 USC § 1361

Next, in his motion to amend his complaint, Callan seeks to add a claim under 28 U.S.C. § 1361, alleging that this statute allows him to bring the instant lawsuit "to report[] high-level corruption in government." [DN 20 at 11.] Specifically, § 1361 provides that "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Importantly, however, "28 U.S.C. § 1361 standing alone is insufficient to confer jurisdiction; only when an officer or employee of the United States owes a *legal duty to the plaintiff* does the district court 'have original jurisdiction of any action in the nature of mandamus.'" *Coal Operators*, 291 F.3d at 915 (quoting 28 U.S.C. § 1361) (emphasis added). This duty "must be mandatory and not discretionary." *Jarrett v. Ashcroft*, 24 F. App'x 503, 504 (6th Cir. 2001) (citing *Ryon v. O'Neill,* 894 F.2d 199, 205 (6th Cir.1990)).

Here, Callan has failed to plead facts identifying which of the many Defendants in this action are failing to perform a mandatory legal duty they owe to him. The statutes Callan cites after he discusses 28 U.S.C. § 1361 include 18 U.S.C. § 7, 18 U.S.C. § 4, and 18 U.S.C. § 3. [DN 2 at 12.] Accordingly to Callan, Defendants are violating these federal criminal laws, and § 1361 allows him to sue "to report corrupt and criminal activities by state and federal officials." [*Id.*]

As an initial matter, the Court has already determined that Callan has no private right to sue under any of the above federal criminal statutes. Moreover, none of those statutes create, on behalf of any of the Defendants named in this action, a legal duty owed to Callan, which is required before § 1361 vests this Court with original jurisdiction. *See, e.g.*, *Jarrett*, 24 F. App'x at 504 (Holding that "mandamus cannot be used to compel the Attorney General or the United States Attorney to conduct investigations or prosecute alleged civil rights violators," which are

13

discretionary functions.); *Misiak v. Freeh*, 22 F. App'x 384, 386 (6th Cir. 2001) ("Misiak was not entitled to mandamus relief because the defendants did not owe him a clear nondiscretionary duty."); *Buchanan v. Apfel*, 249 F.3d 485, 492 (6th Cir. 2001) (Finding that the court had mandamus jurisdiction over attorney-plaintiff's claim that "the Commissioner [of Social Security] has failed to comply with his own regulations" regarding awards of attorney fees in Social Security cases). Because Callan has failed to identify any mandatory duties owed to him by Defendants, Callan has failed to state a claim upon which relief can be granted under § 1361.

### e) Kentucky Revised Statutes §§ 393; § 525.105; 525.110; 525.115; and § 381.697

Finally, Callan has also alleges violations of various Kentucky statutes. First, Callan asserts that, pursuant to Chapter 393 of the Kentucky Revised Statutes, which contains Kentucky's laws regarding escheat of property to the State, the monument came under the ownership of the Kentucky State Treasury Office in 1927 and belongs to the Commonwealth of Kentucky. [*See* DN 1 at 6–7, 13–14; DN 2 at 5.] Additionally, Callan alleges that removal of the Monument violated "Kentucky's Cemetery Laws protecting the destruction and desecration of 'venerated objects.'" [DN 2 at 7.] "Desecration of venerated objects" is a crime under Kentucky law, Ky. Rev. Stat. Ann. § 525.105; 525.110, as is "violating graves." Ky. Rev. Stat. Ann. § 525.115. Kentucky law also requires "[t]he owner or owners of public or private burial grounds . . . [to] protect the burial grounds from desecration or destruction as stipulated in KRS 525.115 . . . . " Ky. Rev. Stat. Ann. § 381.697.

However, having already found that Callan has not pled sufficient facts to state a claim under any of the many federal statutes referenced in his complaint, his motion for preliminary injunction, and his motion to amend his complaint, the Court plainly lacks federal question subject matter jurisdiction over Callan's state law claims. Specifically, claims under Kentucky

law are not "civil actions arising under the Constitution, laws, or treaties of the United States," as is required to establish jurisdiction in this Court. 28 U.S.C. § 1331.

Moreover, as the Court already explained above, Callan has pled no facts to suggest that the former location of the monument was a cemetery or gravesite, which is what these Kentucky statutes cover. Thus, even if the Court had subject-matter jurisdiction over these claims, Callan has still failed to state a claim upon which relief can be granted.

### III. Motion to Amend

As the Court stated above, Callan has filed a motion to file an amended complaint which adds four new federal law claims. [*See* DN 20.] These are 28 USC § 1361 (writ of mandamus); 18 U.S.C. § 4 (misprision of felony); 18 U.S.C § 7 (special maritime jurisdiction); and 18 U.S.C. § 659 (theft and embezzlement by fraud or deception).

Federal Rule of Civil Procedure 15(a)(2) provides that "court[s] should freely give leave [to amend pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, the Sixth Circuit has explained that "[a] motion to amend a complaint should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010) (quoting *Crawford v. Roane,* 53 F.3d 750, 753 (6th Cir. 1995)). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Department of Treasury, State of Michigan, Revenue Div.*, 987 F.2d 376, 382–83 (6th Cir. 1993)). Because the Court has already determined that none of Callan's proposed additional claims withstand Rule 12(b)(6) scrutiny, his motion to amend [DN 20] would be futile, and is therefore denied.

CONCLUSION

For the reasons stated herein, Plaintiff's motion for preliminary injunction and motion to file an amended complaint, [DN 2; DN 20], are **DENIED**. Defendants' motions to dismiss, [DN 13; DN 17; DN 21; DN 24; DN 28; DN 34], are **GRANTED**. The Court will enter a separate Order and Judgment consistent with this Memorandum Opinion.

Date:

cc:     Counsel

        and

        Brennan James Callan
        10428 Bluegrass Parkway #327
        Louisville, KY 40299
        502-762-2093
        PRO SE